UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

| | |
|---|---|
| MARY AGNES WOODS, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7: 04-58-DCR |
| ) | |
| V. ) | |
| ) | |
| KENTUCKY WEST VIRGINIA GAS ) | |
| CO., L.L.C. and KENTUCKY ) | **MEMORANDUM OPINION** |
| HYDROCARBON, ) | **AND ORDER** |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Through this action, Plaintiff Mary Agnes Woods ("Woods") claims that the Defendants violated the Kentucky Civil Rights Act, K.R.S. § 344.040, by engaging in gender and age discrimination. This matter is currently pending for consideration of Defendants Kentucky West Virginia Gas Company ("KWVG") and Kentucky Hydrocarbon's motion for summary judgment. [Record No. 23] After reviewing the pleadings and memoranda filed herein, the Court concludes that the Defendants have satisfied their burden of demonstrating that there are no genuine issues of material fact. In addition, the Defendants are entitled to judgment as a matter of law. Accordingly, the Court will grant the Defendants' motion.

### I.   BACKGROUND

After approximately thirty-four years of employment for Kentucky Hydrocarbon's Langley, Kentucky gas processing plant, Woods was informed on September 30, 1999, that she would be fired as part of a company-wide restructuring. [Record No. 25, Ex. C] The

restructuring resulted in the elimination of four jobs. At the time of her termination, Woods was approximately fifty-six years old. She was informed of her firing in a letter from Gene Musial, the Director of Human Resource Operations for Equitable Production, Kentucky Hydrocarbon's parent company. The letter stated that "I regret to inform you that as a result of the Equitable Production reorganization, your position has been eliminated. This becomes effective December 31, 1999." Several days later, Woods sent an e-mail to Musial stating that "I received a call . . . September 30, 1999, saying [that] . . . I will have [] medical insurance coverage when [I] retire December 31, 1999." [Record No. 20, Ex. D] Based largely on this e-mail, Kentucky Hydrocarbon argues that Woods retired and was not terminated.

Although Woods was officially removed from her position at the end of 1999, she continued working her old job at Kentucky Hydrocarbon through an employment agency, Manpower Services, receiving the same pay she received while employed directly by Kentucky Hydrocarbon. She claims that "[t]hey told me to go back and do the same job I was doing, the same way I was doing it, and I used the same title when I signed anything." (Woods Depo. at 31.) She continued performing her old job (through Manpower) until May 2003. An internal Kentucky Hydrocarbon memo attached to Woods' brief stated as follows:

> Currently, Agnes Woods, former Office Supervisor, is handling all administrative duties associated with the Kentucky Hydrocarbon Plant. During the 1999 restructuring, Agnes was *terminated and forced into retirement* on 12/31/99, but has continued working as a contractor through Manpower Services since that date at a cost of $26.20 per hour.
>
> At the present time, Agnes' normal work schedule is 4 days per week, however, she has indicated to Jim Bailey that she would prefer to work less days per week. In our opinion, we need a full-time Company employee to assist Jim with the administrative functions at the Hydrocarbon Plant. . . . Our recommendation

would be to either explore the possibility of bringing Julie back or hire a full time employee from the outside. In either case, Agnes could train the incumbent and eventually be able to officially retire.

| | |
|---|---|
| Current annual cost through Manpower: | $54,496 |
| Cost to hire Lead Administrative Clerk: | $43,425 |
| Total Savings: | $11,071 |

[Record No. 25, Ex. E (emphasis added)] Woods claims that from September 2002 to May 2003 she trained twenty-three year-old Sherain Andueza to perform her job. In May 2003, the Manpower contract was terminated and Woods was (again) terminated from her job. She claims that after her second termination, in May 2003, Andueza began performing her previous job duties.

## II.   LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue

of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415 (6th Cir. 2002). Once the movant has satisfied this burden, the non-movant must go beyond the assertions made in the pleadings and come forward with specific evidence to demonstrate that there is a genuine issue of material fact. *Id.* The nonmoving party cannot rely upon the assertions in its pleadings; rather, that party must come forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex*, at 324. However, the trial court does not have a duty to search the entire record to establish that it is bereft of any genuine issue of material fact. *In re Morris*, 260 F.3d 654 (6th Cir. 2002). The nonmoving party has an affirmative obligation to direct the court's attention to those specific portions of the record upon which it seeks to rely to create genuine issues of material fact. *Id.* In determining whether there are any genuine issues of material fact, the Court must review all the facts and the inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

### III. LEGAL ANALYSIS

#### A. Abandoned Claims

KWVG argues that it was not Woods employer and is not a proper defendant. Apparently, Kentucky Hydrocarbon extracted natural gas from a gas stream transported by KWVG. There does not appear to be any other connection between KWVG and Woods. And, Woods does not dispute KWVG's claim that it had no involvement in her termination. Accordingly, the Court will grant KWVG's motion.

In addition, Woods appears to have abandoned her gender discrimination claim, which was originally included in the Complaint. As noted by Kentucky Hydrocarbon, Woods was the only woman included in the "workforce reduction," which included several men, and Woods' purported replacement was female. Accordingly, the Court will grant the motion in respect to Woods' gender discrimination claim.

B. Age Discrimination Claim

The language of Kentucky's Civil Rights Act generally tracks the language of the Age Discrimination in Employment Act and Title VII. Thus, the Kentucky statute "should be interpreted consonant with federal interpretation." *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2000) (quoting *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 820 (Ky. 1992)); *Ammerman v. Bd. of Educ. of Nicholas County*, 30 S.W.3d 793, 797-98 (Ky. 2000); *Harker v. Fed. Land Bank*, 679 S.W.2d 226 (Ky. 1984); *Wal-Mart Stores, Inc. v. Williams*, 2003 WL 22220103, *2 (Ky. App. 2003); *Stewart v. University of Louisville*, 65 S.W.3d 536 (Ky. App. 2001); *Kentucky Ctr. for the Arts v. Handley*, 827 S.W.2d 697 (Ky. App. 1991).

Unless the plaintiff in an age discrimination case has direct evidence of discrimination, the court must follow the burden-shifting test outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793-94 (1973). The plaintiff must first make a *prima facie* case of discrimination by showing that: (1) she was at least forty years old at the time of the alleged discrimination; (2) she was subjected to an adverse employment action; (3) she was qualified for the position involved; and (4) she was ultimately replaced by a younger individual. *Reeves v. Sanderson*

*Plumbing Products, Inc.,* 530 U.S. 133, 141-43 (2000); *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 377 (6th Cir. 2002); *Wal-Mart Stores, Inc. v. Williams*, 2003 WL 22220103, *2 (Ky. App. 2003).

In the present action, Kentucky Hydrocarbon claims that Woods was not fired in December 1999; rather, it argues that she voluntarily resigned.[1] The letter from Gene Musial, the internal memo about Wood's post-termination status (both discussed *supra*), and her deposition testimony create a genuine issue of material fact as to whether she did in fact resign. Thus, she has presented sufficient evidence demonstrating that she was fired.

Next, Kentucky Hydrocarbon argues that Woods cannot show that she was treated "differently from similarly situated employees outside the protected class" because "there were no employees under the age of 40 at Kentucky Hydrocarbon at the time of the Company-wide restructuring." It argues, in fact, that Woods simply replaced herself after her termination, because she resumed her previous job duties through her employment at Manpower. Woods argues, however, that her job responsibilities were ultimately assumed by a twenty-three year-old worker trained by Woods. The internal memo previously discussed raised such a possibility: "Agnes could train the incumbent and eventually be able to officially retire." In addition, as noted *supra*, a plaintiff need only demonstrate that their job responsibilities were given to a younger person in order to satisfy the final prong of the *prima facie* age discrimination analysis. *Reeves*, 530 U.S. at 141-43; *Weigel*, 302 F.3d at 377; *Wal-Mart Stores, Inc.*, 2003 WL 22220103 at *2.

---

[1] Kentucky Hydrocarbon does not dispute that Woods was over forty or that she was qualified to perform her job.

Having made a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for Woods' termination. *Weigel*, 302 F.3d at 377. "The defendant bears only the burden of production; the burden of persuasion remains with the plaintiff at all times." *Id*. at 377-78. If the defendant makes such a showing, the plaintiff must show that the justification is a pretext by showing either: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." *Id*. at 378 (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Officials from Kentucky Hydrocarbon claim that Woods was let go "to reduce expenses and reduce the adverse economic effect of a sharp decline in natural gas prices." In addition, it points out that its internal memo noted Woods' desire to work less than a full work-week. The internal memo also notes the cost savings to replace Woods with a new hire.[2] Such considerations are legitimate and non-discriminatory.

> "The purpose of the ADEA, according to the Supreme Court, is to protect older workers from being 'deprived of employment on the basis of inaccurate and stigmatizing stereotypes' and to ensure that employers evaluate their employees on the basis of their merits and not their age. The ADEA was not intended to protect older workers from the often harsh economic realities of common business decisions and the hardships associated with corporate reorganizations, downsizing, plant closings and relocations." *Allen v. Diebold*, 33 F.3d 674, 676-77 (6th Cir.1994) (citations omitted). Consequently, . . . to state a claim under the ADEA, "plaintiffs must allege that [defendant] discriminated against them

---

[2]   The memo notes a savings of $11,071. These savings, however, are partly impacted by the different rate paid to Manpower compared to the rate received by Woods, as well as the additional benefits and bonus costs for a salaried employee. According to the memo, Woods' position at Manpower cost it $26.20 per hour. According to her deposition, she received $20.15 per hour. The memo notes an annual cost to Kentucky Hydrocarbon of $56,496 at $26.20 per hour. Removing the Manpower fees, that leaves approximately $41,891 in salary to Woods. The memo estimated the salary of a new employee at $32,650. Thus, Kentucky Hydrocarbon would save more than $9,000 in salary per year.

> because they were old, not because they were expensive," *id.* at 677, or any other reason unrelated to age: "The Court held [in *Hazen Paper Co. v. Biggins,* 507 U.S. 604 (1993)] that the ADEA prohibits only actions *actually motivated by age* and does not constrain an employer who acts on the basis of other factors – pension status, seniority, wage rate – that are empirically correlated with age. Of course an employer may not use any of these factors as a proxy for age, but *age itself must be the motivating factor behind the employment action in order to constitute an ADEA violation.*" *Allen*, 33 F.3d at 676.

*Lyon v. Ohio Educ. Ass'n and Professional Staff Union*, 53 F.3d 135, 138-39 (6th Cir. 1995) (emphasis in original).

All of these reasons were legitimate and non-discriminatory, as discussed by the Supreme Court in *Hazen*. Woods claims that she did not seek to work less than a full work week. However, the relevant issue is Kentucky Hydrocarbon's motivation and not whether it was incorrect regarding Woods' intent. Moreover, economic efficiency and cost-savings are separate, legitimate reasons for downsizing. Having reviewed the record, there is simply no evidence that Kentucky Hydrocarbon used wage rate as a proxy for age in order to discriminate against older workers *because of their age*.

In addition, Woods has not produced any evidence indicating that age was ever discussed during her employment. Instead, she testified that she had not witnessed any incidents of age discrimination in her lengthy tenure at Kentucky Hydrocarbon, besides the alleged discrimination in her termination. (Woods Depo. at 40-42.) In short, Woods has not rebutted Kentucky Hydrocarbon's non-discriminatory justification for her dismissal. The simple fact that she was replaced with a younger worker does not create a cause of action. In fact, the Kentucky Hydrocarbon internal memo explicitly noted the cost savings of terminating the Manpower Contract and hiring an outside employee to perform the job duties. As noted above, such cost

considerations are not prohibited by the ADEA or the Kentucky Civil Rights Act. *Hazen,* 507 U.S. at 611-12; *Lyon*, 53 F.3d at 138-39.

Woods notes that several Kentucky Hydrocarbon employees were confused about whether Woods voluntarily retired or was fired. Thus, she argues, the stated reasons for her dismissal must be a pretext. Regardless of whether she voluntarily accepted the retirement package, Woods job was terminated as part of a cost-saving restructuring program. And while there is no evidence of age discrimination, there is evidence that replacing Woods provided a significant cost benefit to Kentucky Hydrocarbon. Employers are entitled to make financially self-serving decisions which incidentally harm employees who happen to be in a protected classes. "[T]he ADEA prohibits only actions *actually motivated by age* and does not constrain an employer who acts on the basis of other factors – pension status, seniority, wage rate – that are empirically correlated with age." *Allen*, 33 F.3d at 676.

For the reasons discussed herein, it is hereby **ORDERED** as follows:

(1) The Defendants' motion for summary judgment [Record No. 23] is **GRANTED**;

(2) This case is **STRICKEN** from the Court's active docket. The previously-scheduled pretrial conference and trial dates are **SET ASIDE**;

(3) A separate Judgment will be entered this date.

This 14th day of July, 2005.



Signed By:
*Danny C. Reeves* DCR
United States District Judge